**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEONOR BAKER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 15-1425** |
| | : | |
| **CAROLYN W. COLVIN, Acting** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## O R D E R

Plaintiff Leonor Baker challenged the denial of her claims for Social Security Insurance Benefits under Titles II and XVI of the Social Security Act. (Doc. No. 11.) After Plaintiff's death in December 2015, her mother, Gladys Berger, filed an unopposed Motion to be substituted as Plaintiff. (Doc. No. 16); 20 C.F.R. § 404.503(b). Chief Magistrate Judge Caracappa has recommended granting judgment in favor of the Commissioner and denying as moot Ms. Berger's Motion for Substitution. (Doc. No. 17.) Ms. Berger has filed counseled objections. (Doc. No. 18.) I will grant the substitution motion, but will overrule all Ms. Berger's objections and otherwise adopt the Report and Recommendation.

### I. Procedural History

On January 3, 2011, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability (including, *inter alia*, depression and herniated disc disease) beginning in December 2010. (R. 369.) The Social Security Administration denied the application in April 2011. (Id. 205-214.) Plaintiff appealed, and after hearings in May and June 2012, the ALJ denied Plaintiff's claim for benefits. (Id. 182-200.) The Appeals Council granted Plaintiff's request for review in December 2013 and remanded. (Id. 201-204.) After a hearing in September 2014, the ALJ again denied Plaintiff's claim for benefits. (Id. 20-32.) The

Appeals Council denied Plaintiff's request for review, and Plaintiff filed this action.  (Id. 1-7.)
On March 31, 2016, Judge Caracappa issued her Report and Recommendation.

## II.    Legal Standards

### Motion to Substitute

If a party dies and her claim is not extinguished,  I may order substitution of the proper
party.  See Fed. R. Civ. P. 25(a)(1).  "A motion for substitution may be made by any party or by
the decedent's successor or representative."  Id.

### Magistrate Judge's Report and Recommendation

I must affirm the ALJ's decision if it is supported by substantial evidence.  See 42 U.S.C.
§ 405(g); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  "Substantial
evidence 'does not mean a large or considerable amount of evidence, but rather such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v.
Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65
(1988)).

I must review de novo each issue addressed by the Magistrate Judge to which a timely
and specific objection has been made.  28 U.S.C. § 636(b)(1); see also Brown v. Astrue, 649
F.3d 193, 195 (3d Cir. 2011).  I may "accept, reject, or modify, in whole or in part, the
[Magistrate Judge's] findings and recommendations."  28 U.S.C. § 636(b)(1).  It is also within
my discretion to rely on the Magistrate Judge's proposed findings and recommendations.  See
United States v. Raddatz, 447 U.S. 667, 676 (1980).

### III.     Discussion

*Motion to Substitute*

On February 21, 2016—before Judge Caracappa issued her Report and Recommendation—Ms. Berger moved to be substituted as Plaintiff.  (Doc. No. 16.)  Ms. Berger argued that she is the real party in interest because she would be entitled to receive any disability insurance benefits to which her daughter was entitled.  (Id. at 1-2); 20 C.F.R. § 404.503(b); see also Payton v. Barnhart, 416 F.Supp.2d 385, 386 n.1 (E.D. Pa. 2006) (allowing deceased claimant's son to proceed as substitute party in the District Court).  I agree.  Moreover, if I do not allow this substitution, there will be no plaintiff in this case, thus precluding me from considering Ms. Berger's objections and precluding any appeal from my ruling.  Accordingly, I will grant her Motion for Substitution.

*Judge Caracappa's Report and Recommendation*

Ms. Berger raises several objections, each of which she characterizes as an error by the ALJ.  (See, e.g., Doc. No. 18 at 1 ("The ALJ erred by . . . .").)  Rather than address Judge Caracappa's Report and Recommendation, Ms. Berger instead primarily reiterates her disagreements with the ALJ's underlying decision.  (Id. at 1 ("Gladys Berger objects to the R&R with respect to each of the issues that Leonor Baker raised.").)  Although Ms. Berger's purported objections are thus procedurally deficient, I will nonetheless address them on the merits.  See E.D. Pa. Local Rule 72.1(IV)(c); Facyson v. Barnhart, No. Civ.A. 02-3593, 2003 WL 22436274, at *2 (E.D. Pa. May 30, 2003) (refusing to consider "plaintiff's general dissatisfaction and disagreement with the Report and Recommendation" and addressing the plaintiff's purported objections only in the interest of justice), aff'd, 94 F. App'x 110 (3d Cir. 2004).

1.   The Findings of the State Agency Adjudicator

Ms. Berger argues that "the ALJ erred by treating the findings of a state agency adjudicator as evidence." (Doc. No. 18 at 1-2.)   I agree with Judge Caracappa that this objection is meritless:

> The ALJ clearly states that the single decision makers' [opinion] was not given significant weight. The ALJ is required to consider all of the evidence of record and then determine what is given weight and what is not. The ALJ explains that he considered the single decision makers' opinion along with all of the evidence of record and . . . that opinion was not given significant weight.

(Doc. No. 17 at 27 n.3; see also R. 30.)   I agree that the ALJ did not give the single decisionmaker's findings "significant weight."   Assuming, *arguendo*, the ALJ erroneously considered the state adjudicator's findings as evidence, the error was harmless because, as Judge Caracappa concluded and as I discuss in detail below, substantial additional evidence supported the ALJ's finding of no disability.  Accordingly, I will overrule Ms. Berger's objection.

2.   The ALJ's Findings at Step Three

Ms. Berger argues that the ALJ's findings at Step Three were "not supported by substantial evidence, are contrary to the evidence and are not adequately explained." (Doc. No. 18 at 2.)   Relatedly, Ms. Berger argues that: 1) the ALJ failed to address the available medical evidence; and 2) the ALJ's "factual assertions do not justify his findings." (Id. at 2-3.)  I do not agree.  As Judge Caracappa concluded, the ALJ provided ample factual support and explanation for his determination that Plaintiff did not meet Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders).  (R. 26-27.)  Moreover, the ALJ thoroughly considered whether Plaintiff met the criteria of Paragraphs B and C for these Listings.  (Id.)  Finally, contrary to Ms. Berger's assertion, the ALJ did not conclusorily state that Plaintiff had mild restrictions in the activities of daily living, but rather found, *inter alia*, that "the claimant live[d] with her seventy-

three-year-old mother[,] . . . provide[d] for her own personal care and . . . for her pet dog[,] . . . [drove] an automobile and perform[ed] household chores." (Id. 26.) This was an assessment, not a conclusion.

Assuming, *arguendo*, the ALJ erred at Step Three—either by failing to address the medical evidence or by inadequately evaluating restrictions on the claimant's daily living activities—I also agree with Judge Caracappa that any such error is harmless. See Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 263 (3d Cir. 2006) ("[I]in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence. Therefore, we hold that here the ALJ's conclusory statement in step three was harmless."); Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (an ALJ need not "use particular language or adhere to a particular format in conducting his [step three] analysis," so long as there is "sufficient development of the record and explanation of findings to permit meaningful review").

Judge Caracappa convincingly discussed at length how the medical evidence overwhelmingly supports the ALJ's findings. (See Doc. No. 17 at 17-18 (evaluating voluminous medical records from May 2006 to May 2014 and explaining in detail why Plaintiff had no listed impairment).) Contrary to Ms. Berger's assertion that Judge Caracappa "brushe[d] off Ms. Baker's challenge to the factual accuracy of the ALJ's statements," Judge Caracappa thoroughly explained why Plaintiff did not meet her burden to show a listed impairment and explicitly addressed Plaintiff's treatment history and proffered evidence. (Id.) Ms. Berger offers no reason to revisit this conclusion, and I can find none. Accordingly, I will overrule Ms. Berger's objection.

3. <u>The RFC Determination</u>

Ms. Berger argues that the ALJ did not adequately explain his assessment of Plaintiff's residual functional capacity.  As Judge Caraccapa concluded, in determining Plaintiff's RFC, the ALJ "reviewed all of the medical records and opinions" and fully addressed why Plaintiff's proffered evidence did not make out great physical limitations.  (<u>Id.</u> at 20-24.)  Judge Caracappa also concluded that the ALJ made his findings based on the totality of the record.  (<u>Id.</u> at 20.)  Repeating nearly verbatim the arguments Plaintiff offered in her brief to Judge Caracappa, Ms. Berger contends that Judge Caracappa erred by: 1) not "significantly responding" to Plaintiff's argument that her RFC should incorporate standing and walking limitations; 2) setting the relevant disability onset date as December 2010 forward; and 3) not "seriously address[ing] Plaintiff's] argument" regarding her back impairment.  (Doc. No. 18 at 4-5.)  Ms. Berger also repeats Plaintiff's argument that the ALJ erred by finding Plaintiff limited to low-stress work. (<u>Id.</u>)  Once again, these objections are meritless.

Judge Caracappa adequately explained that although Plaintiff's medical records revealed some evidence of, *inter alia*, ankle injury, gait disturbance, and back impairment, contemporaneous medical records also showed that Plaintiff was  "was well appearing, well developed, and in no acute distress," "was beginning a new aerobics routine for weight loss and energy," and "had normal gait and stance."  (Doc. No. 17 at 24 (citing R. 481-85, 500, 503, 691-94).)  During a November 2011 physical examination, Plaintiff also "denied chronic back pain, chronic neck pain, and sore muscles."  (<u>Id.</u> (citing R. 702.).)  Finally, Judge Caracappa noted that even if the ALJ considered medical records predating the alleged disability onset date, these records simply confirmed normal right ankle and lumbar spine results found in the subsequent records.  (<u>Id.</u> at 21 (citing R. 666).)  Given this extensive discussion of Plaintiff's medical history

and claimed limitations, I must reject the suggestion that Judge Caracappa did not fully address Plaintiff's purported standing, walking, and back-related limitations.

Judge Caracappa also did not err by identifying December 2010 as the alleged disability onset date. (Id. at 21.) Both Plaintiff and her counsel initially identified December 2010 as the onset date. (R. 86, 368.) Two years later, however, Plaintiff's counsel moved to reopen the prior ALJ's 2010 decision to amend the onset date to May 2005 based on "new and material evidence." (R. 23, 126, Exs. B-35-F, B-36-F ("I want to request that you reopen Judge Spitz's . . . decision of December 23rd, 2010.").) After "thoroughly" reviewing the proffered evidence, however, the ALJ concluded that it did not constitute "new and material evidence" warranting reopening because the proffered exhibits merely "show[ed] remote substance abuse of a claimant with a history of IV heroin use and polysubstance abuse." (R. 23); 20 C.F.R. §§ 404.989, 416.1489; Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) (evidence is only "new and material" if it is, inter alia, non-duplicative, relevant, probative, and would have changed the outcome of the Secretary's decision.).

As a threshold matter, I may not review the ALJ's refusal to reopen because it is not a final administrative decision. See 42 U.S.C. § 405(g); Califano v. Sanders, 430 U.S. 99, 107-08 (1977) ("[The Social Security Act] cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits."). Even assuming, arguendo, that I could review the refusal, Ms. Berger has not shown that the ALJ erred. Ms. Berger argues only that the ALJ should have reopened the case because "evidence relating to an individual's condition at one time may be relevant to her condition at another. . . . The fact that some of the evidence Ms. Baker cited was remote in time provides no reason whatsoever for discounting the significance of more recent evidence." (Doc. No. 18 at 5.) This conclusory

statement does not show how the new evidence would have "changed the outcome of the Secretary's determination," however.  Szubak, 745 F.2d at 833.  Accordingly, Petitioner has not shown that the ALJ or Judge Caracappa erred in setting the disability onset date as December 2010.

As to her final objection to the RFC, Ms. Berger argues that the ALJ's conclusion that Plaintiff's RFC should be limited to low-stress work was inconsistent with Social Security Ruling 85-15, requiring an individualized determination of stress.  (Doc. No. 18 at 5); SSR 85-15, 1985 WL 56857 (S.S.A. 1985).  I do not agree.

The ALJ detailed Plaintiff's history of polysubstance abuse and moderate depression, mild difficulty with social functioning, and lack of decompensation for an extended duration. (R. 23, 26-29.)  The ALJ then incorporated these considerations into an individualized finding that Plaintiff was, *inter alia*, "limited to occasional interaction with coworkers, limited interaction with the public . . . , [and] limited to jobs with low concentration, attention, and stress requirements."  (R. 30.)  Accordingly, the ALJ properly considered Plaintiff's individualized ability to handle stress.  See, e.g., Diehl v. Barnhart, 357 F. Supp. 2d 804, 826 (E.D. Pa. 2005) (ALJ complied with SSR 85-15 when considering, *inter alia*, the plaintiff's polysubstance abuse, episodes of decompensation, and social functioning).  Moreover, the ALJ explicitly incorporated Plaintiff's limited ability to deal with stress into the hypothetical he posed to the vocational expert.  (R. 142-43 ("So let's look at work in the following hypothetical[.] . . . And that the interaction with the public be limited completely with no transactions and not working in the vicinity of the public.  And that concentration, attention, stress, pace, quota factors should be limited . . . .").)  Indeed, the vocational expert confirmed that the ALJ's hypothetical explicitly

eliminated "higher stress" work involving close contact with coworkers and the public.  (Id. 117.)

Accordingly, I will overrule all Ms. Berger's objections respecting the RFC determination.

4.  The Treating Physicians' Medical Opinions

Ms. Berger argues that the ALJ rejected the opinions of treating physicians Gary Yeoman and John DeCarlo "without good reason or adequate explanation."  (Doc. No. 18 at 6.)  As Judge Caracappa concluded, however, the ALJ thoroughly reviewed the opinions of Drs. DeCarlo and Yeoman, devoting nearly two pages of his Opinion to discussing Dr. Yeoman's treatment records alone.  (R. 29-30.)  The ALJ also explained why he did not give significant weight to these opinions.  See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (although treating physicians' reports are entitled to "great weight," an ALJ may "afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided").  As Judge Caracappa concluded, "the ALJ explained that Dr. DeCarlo's physical examination of plaintiff contradicted his opinion of plaintiff's limitations, and Dr. Yeoman's opinion contradicted itself."  (Doc No. 17 at 24.)  Because the ALJ thus found that the treating physicians' opinions were contradictory or otherwise unsupported, he could give them less weight.  See, e.g., Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (where the treating physician's opinion is "conflicting and internally contradictory," the ALJ is entitled to deem it non-controlling); Serody v. Chater, 901 F. Supp. 925, 929 (E.D. Pa. 1995) (an ALJ may reject treating physician's opinion on basis of contradictory medical evidence).

Accordingly, I will overrule Ms. Berger's objection.

5.  Discrediting Plaintiff

Ms. Berger argues that the ALJ rejected Plaintiff's testimony "without good reason or adequate explanation."  (Doc. No. 18 at 7.)  I agree with Judge Caracappa that the ALJ provided substantial support for discrediting Plaintiff.  Indeed, the ALJ explained that Plaintiff's testimony was "self-serving, . . . exaggerated the symptoms, and . . .  contradictory."  (R. 28.)  Among the several discrepancies in Plaintiff's testimony, the most serious concerned her purported suicide attempt, which medical records did not support:

> Dr. Yeoman's treatment records for June and July 2014 are particular relevant to the claimant's testimony wherein she stated that on May 12, 2[01]4, she "dove" down some steps in an effort to commit suicide. . . . On June 4, 2014, Dr. Yeoman saw the claimant. . . . She informed her long-term treating physician she had not been sleeping well prior to the incident.  She was walking down a couple of steps when she fell and fractured her left ankle. The claimant never said anything to her physician to suggest her actions were deliberate. . . . The description of the event that she gave to her treating physician seems more likely to be truthful than was her testimony of attempting suicide by diving headlong down the steps.  It also noted that there was no mention in Dr. Yeoman's medical treatment notes of any facial or head injuries.  Her only reported injury was an injury to her left ankle[.] (See Exhibit B-38-F, pp4-8).  This reflects poorly on the claimant's credibility of her testimony during her hearing.

(Id. 29.)  The ALJ amply justified his finding that Plaintiff's testimony was incredible. Accordingly, I will overrule Ms. Berger's objection.

6.  Vocational Expert's Testimony

Ms. Berger argues that the ALJ erroneously based his finding of no disability on vocational expert testimony elicited by a hypothetical question that improperly omitted some of Plaintiff's purported limitations.  I do not agree.  Pursuant to the RFC, the ALJ assessed Plaintiff as able to perform light work limited to the lower end of unskilled jobs.  In posing a hypothetical to the vocational expert, the ALJ limited Plaintiff to jobs falling within SVP-1 and SVP-2.  I agree with Judge Caracappa that because SVP-1 and SVP-2 correspond to unskilled work—i.e.,

the type of work the ALJ determined Plaintiff could perform pursuant to the RFC—the hypothetical was proper.  20 C.F.R. § 404.1568; SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000) (unskilled work corresponds to an SVP of 1-2).  Accordingly, I will overrule Ms. Berger's objection.

### IV.      Conclusion

I will grant Ms. Berger's Motion to be substituted as Plaintiff.  Because I find substantial evidence supports the ALJ's factual determinations, however, I will overrule Ms. Berger's objections and otherwise adopt the Report and Recommendation of the Magistrate Judge.

**AND NOW**, this 10th day of August, 2016, upon independent review of Plaintiff's Complaint (Doc. No. 3), Plaintiff's Brief and Statement of Issues in Support of Request for Review (Doc. No. 11), the Commissioner's Response (Doc. No. 12), Plaintiff's Reply (Doc. No. 13), Judge Caracappa's Report and Recommendation (Doc. No. 17), Ms. Berger's Objections (Doc. No. 18), the administrative record, and all related filings, it is hereby **ORDERED** as follows:

1. The Motion to Substitute Ms. Berger as Plaintiff (Doc. No. 16) is **GRANTED**.

2. Ms. Berger's Objections to the Report and Recommendation (Doc. No. 18) are **OVERRULED**.

3. The Report and Recommendation (Doc. No. 17) is otherwise **APPROVED** and **ADOPTED**.

4. The Clerk of Court shall **CLOSE** this case.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.
